Your Honor, the first case this morning is called 2-11-1297, Donald Diottallevi v. Dennis Diottallevi at the wall. On behalf of the Appalachians, Mr. Robert Black. On behalf of Pamela Diottallevi, Mr. Frederick Roth. On behalf of Dennis Diottallevi, Mr. Charles Corrigan. The appellees have split their time. Thank you. Mr. Black. What happened to you? A series of incidents. A surgery and then a fall down the stairs and some kind of broken bone in my knee joint or something. Anyway. Good morning, Your Honors. May it please the court. My name is Bob Black and I represent plaintiff's appellants in this matter. The bottom line in this case is it's about an action in equity to recover a debt or obligation. There's three things we know here. The defendants received a quarter of a million dollars from the plaintiffs. At the pleading stage, everything indicates that this was an obligation that both parties intended to have repaid by whatever means until one point. And that the amounts have not been repaid. Does by whatever means, as you just said, cause a problem here? Be paid by whatever means? Well, I don't believe that it does cause a problem, Your Honor. I know that things get a little convoluted and sticky and probably more convoluted than they need to be by way of the operating agreement and the changes to the operating agreement. I believe what happened here is that the parties advanced the money, the plaintiffs advanced the money to the defendants. The defendants were going to repay that money. Whether it was a loan, whether it was an equitable or a consideration in the business, paragraph 7 of the operating agreement specifies that upon the sale of the business or the properties, that the monies would be refunded to the extent that those exist, less any outstanding debt. So I think the bottom line here is, yes, I know that there's some machinations in terms of how it's going to be accomplished, but the ultimate thing here is that a quarter million dollars was given and a quarter million dollars is owed back, including by sale of the properties. What was Justice Wheaton's, or pardon me, Judge Wheaton's rationale for denying the relief? Judge Wheaton entered the motion to dismiss based upon two factors, I believe, and that would be the statute of limitations and based upon the fact that there would be public notice of the lack of incorporation of the business and the land trust ownership. And within those two components, she also considered lack of a fiduciary duty or lack of a fiduciary responsibility. Of course, we are, before your honors, on a de novo review so that everything begins afresh and anew before this court. It is our position that it becomes much more streamlined than that. We did cite, to your honors, a couple of cases by way of motion for leave to cite additional authority, which this court allowed. And those cases involve the equitable mortgage and the equitable lien. Those cases are the Beelman v. Beelman case and the Hargrove v. Gerol Corporation case. We had pleaded here several theories, constructive trust, resultant trust, unjust enrichment, declaratory judgment, shareholder derivative actions. The actions involving the corporation directly were at the behest from the record of Judge Wheaton in terms of making the corporation a party here and moving from there. Did the trial court take the position, though, that this was an equity interest in the corporation as opposed to a loan? Because if it's a loan, I mean, as you point out in your reply brief that I didn't really see in your opening brief that this was a loan and that they wouldn't have known about it until the divorce case came about. But it seems to me that the trial court didn't look at it as a loan, but looked at it as an equity interest created by the operating agreement. And because the corporation of the business had no share, they weren't shareholders, the land trusts, they weren't beneficiaries, that based upon the creation of those documents that they would have had a notice that they didn't have an equity interest in this. I don't believe that the trial court ever came out and stated, I'm considering this as strictly an equity interest in the corporation. I think, however, from her rulings, she did view it primarily in that vein because of the fact that she went into the detail about the lack of incorporation, the notice that you should have had that it was never incorporated, and the other factors that you mentioned. But the bottom line, there are several things at issue here. What I'm expressing to your honors is the bottom line here is this is basically money given, expected back, no time frame for the repayment other than the paragraph 7 that says upon sale of the businesses or the properties. And then everybody's moving along nicely. In 2008, as a matter of fact, there's another $22,500 that's advanced. An email is sent saying this is our tabulation of how much is owed back. There's no objection to it. Well, there's not an indication of when payback is supposed to occur. What's the law?  Is it within a reasonable period of time? Is it sometime before a statute of limitations might run such that you're no longer capable of bringing suit to enforce the return or recompensation? Well, we've cited the two cases, Frederickson v. Blumenthal and Maloney v. Meade. And in those circumstances where there was open-ended, more open-ended kind of situation, the cause of action did not arise until the time in which the parties knew that the demand had been made and there was not going to be repayment as per the agreement for years and years. In Frederickson, there was a money deposit in 1963. The aunt with the deposit passed away in 1988. Demand was made in 1989. The demand was rejected and the estate sued at that time, and that was considered appropriate. In the same forum, Maloney v. Meade, where the father died of testate in 1931, the son operated the farm on behalf of the family, even though they all held, I believe they held, one-third interests. The designation in that case was just, you know, the family trusted him, which there are indicia of the same thing in this matter. 1972 was the first time that the son gave notice that he didn't intend to go by this one-third, one-third, one-third thing. Suit was probably brought at that time. So we have a situation here where, you know, there is really no indication that the defendants were not going to be bound by their agreement to repay until April of 2010 when this arose in the dissolution setting. The plaintiffs here tried to intervene in the dissolution setting. The petition to intervene was denied, and then they promptly filed suit in this action. In 2008, when that last $22,000 or so went in and there was some summary of what was owed, would that be considered the demand? I mean, did they say, this is what's owed and we want it now? Or where are we saying the demand came? I think the email of 2008 was a further acknowledgment of what was owed pursuant to what they, this continuing obligation. That they, the quarter of a million dollars had been given. The quarter of a million dollars was expected back at some point. And this additional $22,005 was given. And say, okay, I just want to reiterate and clarify, these are the amounts that are owed. And there was never any indication of any dispute of that. And the defendants never said, no, that's not the amount. They didn't say anything. There's nothing of record where the defendants ever disputed the amount or that it was owed back. The only thing that arose in the record is during the dissolution action when Defendant Pamela said, oh, we own 100% of everything, which is the first time that the plaintiffs had heard that. Because we even have deposition testimony in the dissolution action that, okay, family trusts family. We'll figure it out. Do we have jurisdiction over this case? Yes, Your Honor. VCR v. Andrews, well, brilliantly written. My understanding is that VCR v. Andrews is currently before the Illinois Supreme Court on a certificate of importance. My understanding further is that it has been fully briefed. Obviously, what the Supreme Court resolves in terms of that case is going to affect this case. We've stated our position in terms of the appellate jurisdiction that looking at Local Rule 5.03, first of all, that the local rule, and this is following the Vision Point v. Haas case, that the local rule shouldn't make things more difficult in terms of how jurisdiction is obtained. It shouldn't conflict with a Supreme Court rule. And we have a circumstance where Rule 373 through the Harrisburg case has been interpreted as allowing a notice of appeal to be received. How does the local rule make it more difficult to appeal? I mean, you have the conventional manner that if this had been filed conventionally, nothing has been taken away from any litigants. Well, I believe that it just, the typical setting of when something is filed in the circuit court by way of a line of cases is when the clerk's office exercises custody and control over that and makes it part of the record. So perhaps more difficult is a bad phraseology, but it restricts the ability to timely obtain appellate jurisdiction when there are other mechanisms that actually are a little more convoluted, including the pro of the mailing rule, that allow the notice of appeal to be timely filed. If we determine that we don't have jurisdiction, do you intend to file a PLA? Well, I have not discussed that aspect of it with my client. I would presume that would be the case. It's just to keep it alive for no other reason than to keep it alive. Well, if the other case was reversed, you probably would get relief and the court would remand it back. The Supreme Court would vacate this judgment, remand it back for further consideration on the merits. I would believe so. In view of the decision. If that happens, what's the difference between that and us holding our decision in abeyance until the Supreme Court rules in the other case? None that I see. Of course, if the Supreme Court enters a supervisory order, affirms VC&M, but enters a supervisory order saying, look at it anyway, then... We don't, yeah, it's all speculation what the Supreme Court's going to do with it. And I understand that, you know, the earliest it could possibly be set for oral argument would be November, since the briefing schedule's now been completed. And so either November or January, I would presume, and then who knows? Well... Then who knows? In my past experience, the Supreme Court has vacated decisions that were on all fours and actually stronger than the decision that was written by the Supreme Court, and they vacated that decision. And for some reason, when it was remanded back for further consideration, supplemental briefs were ordered, and the next thing, there was a motion to dismiss the appeal. So what happened was, that decision evaporated into fantasy land, because once it was vacated and then dismissed by agreement of the parties, which is a requirement, the case didn't exist anymore. And it was such a good decision. You know, if there was no such thing as a pilot project for e-filing in the state of Illinois, and you e-filed your notice of appeal, would that be in violation of the Supreme Court rule? If there was no such thing as a pilot project, then... If there was no such thing as any rules about e-filing, no rules in DuPage about e-filing, no rules anywhere about e-filing, and you just, instead of dropping off, you said it electronically, would that be in violation of the Supreme Court rule? I think if there were no pilot program, there would be no ability to send it electronically, Your Honor. I think that's the bottom line. Well, but if you sent it, and then the clerk got it and printed it off and put it in a file, I mean, your earlier argument is, once it's filed by the clerk, it's filed. The actual mechanism to do so is more convoluted than just sending them something by e-filing. There's a process, from my recollection, that you sign up with the program, and you have certain passwords, and it's sent over for review and backwards before it's even going to be filed. That whole system is not in place unless there's a pilot program. Don't these rules from DuPage then have the effect of a Supreme Court rule? I mean, the MR from the Supreme Court that allows for the e-filing says, this MR takes precedence over any other Supreme Court rules in conflict. And then part of the MR is, DuPage or whatever circuit, if you want to file this or start e-filing, you have to send us your rules, and then we have to say it's okay. So presumably, I haven't heard anything where DuPage didn't send the rules, that the rules were different from what they are or were when this notice of appeal was filed. So, I mean, if we take it to its logical conclusion, wouldn't these rules then have basically the effect of Supreme Court rules? I still go back to Vision Point v. Haas, which talks about how the local circuit court rules can't alter or make things, you know, change the mechanism of proper. The local rule is basically a rule of convenience, so to speak, but you can't, by local rule, change the game. That, I think, is what Vision Point v. Haas said. And, of course, we've still got our argument that the nomenclature appellate document does not apply to a notice of appeal because it is filed in the trial court, and it's the document that confers appellate jurisdiction. In that way, it's no more of an appellate document than the underlying judgment, which is the other step before you can get appellate jurisdiction. I didn't see or hear Mike. We don't have an opportunity unless there's questions from the other judges. Not right now. We may have an opportunity to make a vote. Thank you, Your Honor. Which appellee is going to go next? It's going to be Mr. Corrigan. That's me, Your Honor. Very well. May it please the Court, counsel. Good morning. Charles Corrigan on behalf of Dennis Diotullavi, one of the appellees. I think I first address, Justice Burke, your questions about the effect of the prior decision of this court in the Andrews case. Unless the Supreme Court were to reverse that decision, I don't see any way to distinguish the holding there with what our position is here. The second part of the opinion was that you just simply cannot e-file a notice of appeal under DuPage local rules. I think your questions pointed to perhaps the source of the authority to adopt those rules came from the Supreme Court itself, and I think that is the authority that the Supreme Court generated that rule upon. There's still the ability to file conventionally. That's what's required by the rule for a notice of appeal. There's something, well, obviously it's jurisdictional to file a notice of appeal to begin with, and presumably the 18th Circuit decided that they wanted a substantial, something solid, filed with the court, paper copy, so that they could be sure that the jurisdictional notice was filed. Is a notice of appeal an appellate document? What else would it be? That was the rhetorical question I asked in my brief, and it was actually repeated by Mr. Black in the reply, but he didn't answer it, that what other documents could be filed in the circuit court that could be considered an appellate document? If it's not a notice of appeal. Does that then make an e-mail that would be otherwise liable or slander? Which would it be? Would it be liable because it's an e-mail that hasn't been but could be printed out, or is it slander because it's not a document? I don't know. I haven't looked at the case file. It's like the radio waves, you know, when it was on radio. They're everywhere. Yeah, there was a discussion whether that's liable or slander. I remember that from law school, but I haven't looked to see whether e-mail is considered liable or slander. I think if it's defamatory, there's going to be a cause of action one way or the other. How would you be prejudiced or your client be prejudiced if we held our decision in abeyance until the Supreme Court ruled in the other case? Do you understand that if we agree with what you just said, we wouldn't address the merits? We would never get to the merits of the appeal? Yes. It would be dismissed. Right. I don't think that there would be great prejudice to Denis Teotihuacan if you held this in abeyance until the Supreme Court ruled, other than the fact that this is passage of time. But if they were to go ahead and file a petition to go up there, we'd still have that hanging over our head until that's decided. You know, it's one or the other. I think it's within your discretion. It could end up being a shorter period of time before we resolve this case once and for all. If we hold this in abeyance and they rule, we can then address, we've already addressed the merits of the case. Right. Whereas if they tell us to reconsider it in light of such and such, we're going to pass like we have in past cases or supplemental briefing in light of that case. And then you write briefs. We then render a new decision. I don't think it's harmful to my client one way or the other. To be quite frank with you, I don't have a preference one way or the other. Okay. What about if we agree with if we stand on our prior decision, but now we have a question of do we apply it retroactively or prospectively? Well, I understand the idea that, well, save me and then let the next person have the problem. But I think generally the rules are if it's a procedural question, and this is, I think, procedural, not substantive, that there's no question that it's applied retroactively or to pending cases. The rule hasn't changed. The page rule was there before he filed the notice of appeal. It's still the same. The rule hasn't changed. It's just interpretation of whether or not his electronic filing was appropriate or not. We have a number of cases other than this one on appeal. Understanding. And I think when we certify this, the other case of the Supreme Court, we did certify it, didn't we? Yes, we did. That the Supreme Court would be aware that it would probably have to, if it wants to, not have to address the issue again in another appeal, address whether or not it would be retrospective or prospective. Hopefully they would resolve that issue in the decision they render in the case. I would imagine that they will, yes. It would seem reasonable. As to the substantive issues other than the jurisdictional. What about the statute of limitations? Why would that be applicable? Well, they conceded the statute of limitations for all the causes of actions is five years. And as we characterize, I think, best if you read the pleadings as a loan with, as you said, uncertain repayment terms. It's been well over five years since the loan was made. They've relied. I can only deal with the pleadings that are presented against my clients. They haven't filed a case for breach of a loan agreement. They haven't filed a case for a breach of contract. They filed a breach of fiduciary duty. They filed shareholder derivative actions. All the cases, all the clients that they've filed, and this is their third attempt at pleading, have a five-year statute of limitations. They've tried to get around the five years by saying, well, there was some sort of silence that amounts to fraudulent concealment. Again, because they think there's a fiduciary relationship between these two brothers. And as we point out in our brief and the cases that are extensively discussed, it takes more than just a family relationship to create a fiduciary duty. Whatever happened in the last infusion of cash in 2008 and then some summary of this is the amount that's owed, what was that? As I read the complaint, it doesn't state how much cash was infused in 2008 or actually that there was cash infused in 2008. What I look at when I see that reference to the record is the e-mail that has a summary, total summary of what's owed up at that time and no mention of an infusion of cash at that point. I understood counsel's remark to say that there was money put in at that time, but I did not see it in the complaint itself. Well, then what was the e-mail? I mean, what did that constitute? Was that a demand? Was that some sort of notice? Was that just a friendly greeting between brothers? What was it? Well, I think the way they characterized it in the complaint was to say a recapitulation of how much is owed at that time. And, you know, there's a, along with that, there's an operating agreement is the title of it, and it's a document that the only way I can characterize it is a recording of the discussions that occurred between these people at a certain point in time. I don't think it amounts to the meeting of the minds in any sort of way. It's so vague as to what a person's allegations is. I don't see how it could arise to a contract. Well, maybe that's why he didn't bring a breach of contract action. But, you know, did Dennis respond in any way to this, your client? Did he say, yeah, I do owe that money, I know. But where do you want it from, the company? You want it from me? Who do you want it from, the dog? What did he say? If I have a moment to respond, I'll be on that time. They don't have any allegations of his response in their complaint. To the extent that they do have allegations of expectations of repayment, it doesn't say that at the time the money was given that it was intended that once the property was sold, it would be repaid, or once a certain period of time passed, it would be repaid. And when counsel brings up the idea that he has cited a couple extra cases for maybe potential different claims for relief, those claims fail because of the lack of those allegations in the complaint as well. When you have an equitable mortgage, you know, at the time that the loan was made, there's an understanding and an agreement between the parties that you're going to get your money back when we sell this property. That's what the cases that he cites say. And we don't have that here. It's lacking in the complaint. Any other questions? I'll yield to Mr. Rothman. Thank you, sir. Good morning, Justices. Good morning, Mr. Rothman. My name is Fred Roth. I'm here representing Pamela Diot-Levy. And the first subject that I wanted to address to the court was I had filed a motion to dismiss this appeal on the basis of the prior Rule 23 order where this court, in my reading of the 23 order, had previously specifically addressed issues that were then raised in this second lawsuit. And that in the prior divorce ruling of Judge Sheen, which had been affirmed in its totality by this court, in fact, by this panel, in there, it had these dollar amounts that the Diot-Levy family purportedly is owed. And it said that Dennis Diot-Levy is responsible for paying them back, both for those amounts that were testified to in the divorce case, but also any other liability, any other amounts that were due to the Diot-Levy family. And this court, in paragraph 23 of its Rule 23 order, specifically pointed out the trial court correctly concluded that the operating agreement related only to the corporation. It was simply an investment into the family tree nursery. They do not make any allegation in any of their amended pleasings in this case in the trial court that they should have been on the title to the properties themselves. What they allege, and paragraph 21 specifically alleges, and it's repeated throughout, is they say that there was some wrongful conduct on the part of Dennis and Pamela because they did not transfer the title to the corporation. Which is, from those allegations, they're themselves alleging that the equitable interest or the interest in this property or the title to this property was to go to the corporation, and their claims are therefore claims that they were looking toward the corporation. The corporation had been dissolved in 2001, more than 10 years from now, and at the time that they filed this, more than five years from all of their causes of action. What Judge Whedon, I think, correctly decided was, in the very first proceeding on the first motion to dismiss the first complaint, she said the corporation has got to be the necessary party here for this. Which is following exactly in line with what your Rule 23 order was. Was the corporation made a necessary party in the divorce proceedings or the dissolution proceedings? It had been dissolved. It had not been reinstituted or reinstated until after the first complaint in the second case, in this case. It was still dissolved at the time. However, Judge Sheen did say that the corporation would be an asset of Dennis Diotulabi, who later reinstated it. And the plaintiffs weren't parties to that, and specifically were not allowed to be parties, and we affirmed Judge Sheen's ruling regarding intervention. So if they weren't in the divorce proceeding to make their claims, how can we hold that against them? How can we say that that ruling has registered a counter effect on us? Well, they claimed they were necessary parties and they should have been allowed. And as this Court noted in its Rule 23, they didn't ask for reconsideration and they didn't file an appeal of that decision preventing them from entering the case. Which means the judgment stands and they weren't necessary parties. And if they weren't necessary parties, then they wouldn't have been affected by the judgment. Explain how that logic doesn't fit. You make representations that they're bound by it, and then you tell us that the trial court, and we affirmed the trial court, saying they weren't necessary parties. Right. How can they be bound by the decision if they weren't joined and they weren't necessary parties? Under the rules of either res judicata or claudibus estoppel, it's not only the parties, but also those in privity with the parties. Well, who was in privy? I mean, you say it was the corporation that was supposed to be the party in interest or the party that had the interest in the property. Their allegation is the corporation is the one that should have had the interest in the property. I'm more interested in whether you believe that your client has an equitable interest in the property that she acquired, but she doesn't have to pay or recompense anyone because the divorce decree placed that burden on her ex-spouse. Well, I think in divorce court that happens all the time. A decision is made as to which spouse pays which obligations. I'm not disagreeing with that. What I'm suggesting to you is I'm trying to figure out what this particular piece that I'm holding in my hand, where does it go in the jigsaw puzzle that I'm supposed to be putting together? And the point is, is that either this is a loan, in which case if it's a loan, your client can seek indemnification from her ex-spouse because that's what the judgment in the dissolution says. If it isn't a loan, but it relates to an equitable interest, does she have, I'm asking you, does she have an equitable interest equal to her ex-spouse, but she doesn't have to pay or do anything relative to her interest because the divorce decree placed the onus on the ex-spouse for whatever recompense or liability might relate to either the corporation or the other family member. Well, if she has a 50% equitable interest as a beneficiary of the land trust that owns these properties, which is an interest that has been affirmed by this court as well as the trial judge, then that is her interest in these properties. Their claim in this case was that they have some kind of an interest directly in those properties. Judge Wheaton said by their pleadings, they're actually saying they put some money into this mix, but by the Exhibit C signed back in 2001, they're claiming in their allegations and pursuant to Exhibit C that the corporation has some interest in those properties or that the title should have been moved over to the corporation, which never occurred. So Judge Sheen, looking at it from the factual standpoint of who's entitled and whose property this is, decided it's 50-50 between the two marital entities. As to their claim, they're now claiming that they have some equitable interest in those properties, which would have to go through the corporation in some way, as if someone who claims an interest in a corporation has a direct interest in equity of some type in the individual corporate assets, which have never been transferred over. What is your position relative to what your client's responsibilities are to the plaintiffs if what she has is an equitable interest? I don't think she has any responsibility to them. What responsibilities does she have, if any, if it's a loan? I've not seen any loan documents where she has signed agreeing to pay back money on any particular terms. The time period for bringing an oral loan claim is long past by the time they started bringing this action. So I would say the statute of limitations bars that, and they produced no documents signed by her where she agreed that she borrowed money on certain terms and conditions and that it was to be paid back at a certain time and so forth. Is there any question in your client's mind that that money came from other family members, or did she supply the money that bought the sawmill and the tree farm? I'm reluctant to go outside the record to tell you what I understand occurred. But what's in the record is they claim they gave money to Dennis under some circumstances, and then there's this Exhibit C, and they're claiming that they should get paid back some money. I don't dispute that part of what they're saying as far as what my client's position is with respect to all of that. We only stayed in motions to dismiss. We didn't put forth her position as to what her understanding was about the money. I could go there, but it's outside the record. Will your client be prejudiced if we withhold our opinion until the Supreme Court rules another case or not? If it takes them five years, we would be prejudiced. If it takes them six months, we're probably not. The reason is they're trying to sell the properties, and there's a Liz Pendens, which effectively is making it very difficult to sell the properties. As the divorce judge indicated, my client is working presently but not making a lot and could use the money for the sale of the properties, which is being held up because of this case. So there's some prejudice, but it's more relative to time. Prejudice usually means that if there's some alternative route that would result in a more beneficial result, then you would be prejudiced. But if a PLA is filed, you will be prejudiced even more. Thank you. Any other questions? No. Thank you. He's walking without crutches. A miracle. I never realized oral arguments had such a beneficial effect. I feel so invigorated in my oral arguments. There's only three steps I can do. Don't fall down. You're not responsible. I understand. In regard to Justice McClaren's questions about if this matter was held in abeyance, would there be any effect of prejudice? And I think that you've touched upon one aspect here, and that would be the client expense. If we had to file a PLA and go through other things and have supplemental briefing, all of us would have additional client expense, or all of our clients would have an additional expense here versus holding it in abeyance. In terms of the racial cut, I just want to go into that briefly. Your Honors have, I think, succinctly pointed out that there's no identity of parties, there's no identity of claims. We've cited the case law that says if you petition to intervene and it's denied, it can't have that kind of preclusive race judicata effect. But also, there is – Your clients filed a PLA on that, too, and I think it was denied, wasn't it? Did we call it? My clients did not. No, not your – Yes. On the intervention, the petition to intervene was denied by Judge Sheen. Correct. And there wasn't – was there a PLA filed on that ruling? Not to my recollection. Yeah. I was involved at the time, but I certainly don't recall that. Okay. I think what we've got here, too, at the pleading stage is no question but that defendants received a quarter of a million dollars from the plaintiffs. There is no dispute as to that fact, and if I am recalling it correctly, there was an indication of record initially in the dissolution action where Pamela said, yeah, we got everything but, you know, a small sum from the family. So that's not an issue at this point in the pleading stage. Thank you. The mention was also made of the Bill 23 and the dissolution action and the underlying trial court judgment about assessment of debts. If you compare the numbers there that were from the trial court there, Judge Sheen's findings, they don't even come close to matching what's at issue in this case and what's being claimed at this case. And even Judge Sheen in his letter opinion in the underlying dissolution action said, you know, we're not even certain about certain things here. The complaint in the trial court, I mean, I think one of the attorneys for the other side argued that it did not say anything about a loan, that it was never alleged that there was a loan. It was a shareholder derivative, you know, equitable result in trust, I believe. Right. I mean, does the complaint set forth a loan and a failure to repay the loan? I believe it does by way of the causes of actions pleaded in terms of the constructive trust and the resulting trust. I believe that's the effect also by way of the allegations for unjust enrichment. And more so based upon our cases that we cited on for leave to cite additional authority, which would be the Hargrove and the Mielman cases that talk about the equitable lien and the equitable mortgage. But the equitable lien being even more expansive and pervasive than the equitable mortgage, which in those cases involves startlingly similar circumstances in terms of, you know, monies being given and property being involved, property being used as the basis for it. And again, I'm going to come back to this paragraph seven of this operating agreement. That's that's appended to the complaint. That's part of the plea. Did your clients? I mean, the operating agreement is signed by Dennis and Pamela. Right. Did your clients have an opportunity to sign the agreement? Did they see the agreement? How, you know, where is this agreement posted? Is it in the business? You know, the nomenclature operating agreement is what was placed upon there. And it's obviously only signed by the defendants. I believe the allegations are that they got together to review this. And there was some drafting done after a meeting with an attorney. And this is what came out of it. And everybody saw it. The debt was acknowledged in the divorce case. And Dennis was ordered to repay the debt. Is that correct? The debt was acknowledged in the divorce case. The numbers that are allocated to him are talked about in terms of money is owed the family. And those numbers don't match what is being alleged here. So I'm not sure where those numbers came from. Obviously, my clients were not allowed to participate. So those numbers came from where they came from. Okay. Any other questions? No. Okay. We'll take the case under advisement. There will be a short recess.